Kevin D. Neal (Bar No. 011640)
Kenneth N. Ralston (Bar No. 034022)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
Telephone:    (602) 530-8000
Facsimile:    (602) 530-8500
kevin.neal@gknet.com
ken.ralston@gknet.com

Patrick Lanciotti (*Pro Hac Vice Pending*)
Andrew Croner (*Pro Hac Vice Pending*)
360 Lexington Avenue, 11th Fl.
New York, New York 10017
(212) 397-1000
PLanciotti@napolilaw.com
acroner@napolilaw.com

Paul J. Napoli (*Pro Hac Vice Pending*)
1302 Avenida Ponce de Leon
Santurce, Puerto Rico 00907
(833) 271-4502
pnapoli@nsprlaw.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TOWN OF MARANA, | ) Case No. _____ |
| | ) Judge:_____ |
| 11555 West Civic Center Drive | ) Magistrate:_____ |
| Marana, AZ 85653 | ) |
| | ) **FTCA COMPLAINT** |
| *Plaintiff,* | ) **28 U.S.C. §§ 1346(B)(1) &** |
| | ) **2674** |
| -*vs* - | ) |
| | ) **CERCLA COMPLAINT** |
| UNITED STATES OF AMERICA, | ) **42 U.S.C. 9607(a),** |
| c/o Gary Restaino, U.S. Attorney, | ) **9613(f)(1), and 9613(g)** |
| U.S. Attorney's Office for the Dist. Of AZ | ) |
| Two Renaissance Square 40 N. Central | ) **RCRA COMPLAINT** |
| Avenue | ) **42 U.S.C. § 6972(a)(1)(B)** |
| Suite 1800, Phoenix, AZ 85004 | ) |
| | ) |
| *Defendant.* | ) |

## COMPLAINT

Now comes Plaintiff, TOWN OF MARANA (hereinafter "Plaintiff") to file this complaint under the Federal Tort Claims Act ("FTCA"), the Resource Conservation and Recovery Act ("RCRA"), and the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), against the United States of America (hereinafter "the United States") to recover past, present, and future damages caused by ongoing contamination of Plaintiff's drinking water supply with per- and poly- fluoroalkyl-based substances ("PFAS") disposed of at, or otherwise released at the Davis-Monthan Air Force Base ("DMAFB") addressed at S Wilmot Rd, Tucson, AZ 85708. As of the date of filing of this Complaint, DMAFB has taken no action to stop or even mitigate the ongoing migration of its PFAS contamination into Plaintiff's water supply, nor has agreed to pay for, reimburse, or otherwise offer to share any of the monetary damages incurred by Plaintiff in response to the contamination.

## THE PARTIES

1.      Plaintiff is a political subdivision organized under the laws of the State of Arizona, with its principal place of business located at 11555 West Civic Center Drive, Marana, AZ 85653.

2.      Defendant, United States, owns the U.S. Department of Defense and its armed services branches, including the U.S. Air Force ("USAF") and DMAFB.

3.      DMAFB is located at S Wilmot Rd, Tucson, AZ 85708.  The base is best known as the location of the Air Force Materiel Command's 309th Aerospace Maintenance

and Regeneration Group (309 AMARG), the aircraft boneyard for all excess military and U.S. government aircraft and aerospace vehicles.

4.     Under Rule 4(i) of the Federal Rules of Civil procedure, Defendant's address for service is the U.S. Attorney's Office for the District of Arizona, Two Renaissance Square 40 N. Central Avenue, Suite 1800, Phoenix, AZ 85004.

## BACKGROUND FACTS

5.     Plaintiff, the Town of Marana, owns and operates the Marana Water Department ("MWD"). The MWD operates the public water and wastewater utility, serving residential, commercial, and industrial customers within and outside the Town boundaries.

6.     The MWD has been operating for more than 27 years and currently serves approximately 28,310 people through over 11,324 service connections. The MWD's distribution system is comprised of seven (7) independent water systems utilizing nineteen (19) production supply wells that cover both the north and south areas of Marana, as well as a small area outside of the Town Boundary adjacent to Saguaro National Park.

7.     In mid-December 2016, the Town's supply wells were tested for per-and polyfluoroalkyl substances ("PFAS"), including but not limited to perfluorooctanesulfonic acid ("PFOS") and perfluorooctanoic acid ("PFOA"). In January 2017, six (6) supply wells in two systems (Picture Rocks Water System and Airline-Lambert Water System) had PFOA/PFOS detections in levels over 70 parts per trillion ("ppt"). Additional potable wells in two (2) other water systems also had PFAS detections.

8.      Since 2016 the Town has continued to test for PFAS. In October 2022: La Puerta Well had detections of 17.5 ppt of PFOA and 47.8 ppt of PFOS; the Saguaro Bloom Well had detections of 12.7 ppt of PFOA and 55.5 ppt of PFOS; Oshrin Well had detections of 6.86 ppt of PFOA and 37.1 ppt of PFOS; Pioneer Well had detections of 3.18 ppt of PFOA and 16.8 ppt of PFOS; Gladden Well had detections of 10.9 ppt of PFOA and 25.6 ppt of PFOA; Sandario Well had detections of 3.95 ppt of PFOA and 14.5 ppt of PFOS; Continental Reserve 1 Well had detections of 13.8 ppt of PFOA and 33.9 ppt of PFOS; and Continental Reserve 2 Well had detections of 12.4 ppt of PFOA and 28.5 ppt of PFOS. In April 2023: La Puerta Well had detections of 19.7 ppt of PFOA and 52.8 ppt of PFOS; the Saguaro Bloom Well had detections of 12.9 ppt of PFOA and 56.2 ppt of PFOS; Oshrin Well had detections of 3.31 ppt of PFOA and 19.3 ppt of PFOS; Pioneer Well had detections of 4.30 ppt of PFOA and 19.5 ppt of PFOS; Marana Park Reservoir EPDS 003 (Gladden and Sandario Wells) had detections of 7.03 PFOA and 19.0 PFOS; Continental Reserve 1 Well had detections of 14.3 ppt of PFOA and 33.7 ppt of PFOS; and Continental Reserve 2 Well had detections of 13.3 ppt of PFOA and 30.7 ppt of PFOS.

9.      The Air Force began using PFAS-based aqueous firefighting foams ("AFFF") in 1970 to extinguish fuel-based fires. Beginning in 2009, DMAFB followed the EPA and issued a short-term provisional health advisory of 400 ppt for PFOA and 200 ppt for PFOS. The DMAFB now applies the lifetime exposure health advisory of 70 ppt for both PFOA and PFOS.

10.     DMAFB is located at S Wilmot Rd, Tucson, AZ 85708, is operated by the U.S. Air Force, and has used aqueous firefighting foams ("AFFF") containing PFAS such as PFOS and related fluorochemicals that can degrade to PFOA.

11.     AFFF-containing PFAS were used in training exercises and in emergency situations at DMAFB, in such a manner that these dangerous chemicals would be released into the environment. At any given time during its operation, DMAFB housed and used thousands of gallons of AFFF concentrate. Air Force personnel conducted training exercises at DMAFB including firefighting and explosion training that used AFFF for decades.

12.     Due to these training operations, AFFF was released into the surrounding air, soil, and groundwater at DMAFB.

13.     PFOA and PFOS that originated and were released from DMAFB have contaminated Plaintiff's water supply.

14.     On information and belief, for decades, the Department of Defense ("DOD") knew firefighting foams with PFAS were dangerous but continued their use. As far back as the 1970s, studies conducted by the DOD showed that AFFF-containing PFAS was toxic.

15.     On information and belief, by the 1980s, animal studies conducted by the United States Air Force revealed that PFAS chemicals could pose environmental and health risks.

16.     In March 2011 the DOD Materials of Emerging Regulatory Interest Team issued Risk Alert # 03-11 to all military branch environmental coordinators stating, among

other things, that (a) the discharge of PFAS-containing AFFF was regulated under the federal Clean Water Act; (b) potential liability for the release of such foam needed to be weighed against the cost of disposal and resupply with alternative chemicals; (c) uncontrolled, repeated application of PFAS-containing AFFF at fire training areas could be expected to contaminate soil and groundwater, and thus such activities needed to be managed; and (d) containment, treatment, and proper disposal of foam discharges through the use of lined pits and improved wastewater treatment were recommended.

17.    On information and belief, PFOA and PFOS that originated and were released from DMAFB have contaminated Plaintiff's water supply.

18.    As a direct and proximate result of Defendant's acts and omissions, Plaintiff's wells have become contaminated with PFAS.

19.    Plaintiff's damages, caused by the above contamination, include, but are not limited to, investigation costs, testing and monitoring costs, costs of planning, design and installation of water treatment systems, treatment, operating and maintenance costs, infrastructure modifications, engineering fees and other related costs.

20.    Defendant, as the responsible party – and not Plaintiff or its customers – should bear all past, present and future costs of addressing the above contamination.

21.    Upon information and belief, Defendant is responsible, negligently, intentionally and/or in some actionable manner, for the events and happenings referred to herein, and caused and continues to cause injuries and damages legally thereby to Plaintiff, as alleged, either through Defendant's own conduct or through the conduct of its agents,

servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

## BACKGROUND ON PFAS

22.     PFAS are man-made manufactured chemical compounds containing fluorine and carbon. These substances have been used for decades in the manufacture of, among other things, household and commercial products that resist heat, stains, oil, and water. These substances are not naturally occurring and must be manufactured.

23.     PFAS get into the environment from industrial facilities that make or use PFAS to make other products. They also enter the environment when released from PFAS-containing consumer products during their use and disposal.

24.     PFAS can remain in the environment, particularly in water, for many years. PFAS can move through soil and into groundwater or be carried in air.

25.     The two most widely studied types of these substances are PFOA and PFOS.

26.     PFOA and PFOS easily dissolve in water, and thus they are mobile and easily spread in the environment. PFOA and PFOS also readily contaminate soils and leach from the soil into groundwater, where they can travel significant distances.

27.     PFOA and PFOS are characterized by the presence of multiple carbon-fluorine bonds, which are exceptionally strong and stable. As a result, PFOA and PFOS are thermally, chemically, and biologically stable. They resist degradation due to light, water, and biological processes.

28.     PFOA and PFOS have unique properties that cause them to be: (i) mobile and persistent, meaning that they readily spread into the environment where they break

down very slowly; (ii) bioaccumulative and biomagnifying, meaning that they tend to accumulate in organisms and up the food chain; and (iii) toxic, meaning that they pose serious health risks to humans and animals, including cancer.

29.     Bioaccumulation occurs when an organism absorbs a substance at a rate faster than the rate at which the substance is lost by metabolism and excretion. Biomagnification occurs when the concentration of a substance in the tissues of organisms increases as the substance travels up the food chain.

30.     The chemical structure of PFOA and PFOS makes them resistant to breakdown or environmental degradation. As a result, they are persistent when released into the environment. Because they do not biodegrade, PFAS are often referred to as "forever chemicals."

31.     PFOA and PFOS bioaccumulate/biomagnify in numerous ways. First, they are relatively stable once ingested, so that they bioaccumulate in individual organisms for significant periods of time. Because of this stability, any newly ingested PFOA and PFOS will be added to any PFOA and PFOS already present. In humans, PFOA and PFOS remain in the body for years.

32.     PFOA and PFOS get into the environment from industrial facilities that make PFOA and PFOS or use PFOA and PFOS to make other products. It also enters the environment when released from PFOA- and PFOS-containing consumer products during their use, storage, and disposal.

33.    PFOA and PFOS can remain in the environment, particularly in water, for many years. PFOA and PFOS can move through soil and into groundwater, or groundwater or be carried in air.

34.    Human studies show associations between PFOA and PFOS levels in blood and an increased risk of several health effects, including effects on the liver, the immune system, high cholesterol levels, increased risk of high blood pressure, changes in thyroid hormone, ulcerative colitis (autoimmune disease), pre-eclampsia (a complication of pregnancy that includes high blood pressure), and kidney and testicular cancer.

35.    These injuries can arise months or years after exposure to PFOA and/or PFOS.

36.    PFOA's and PFOS's extreme persistence in the environment and its toxicity, mobility and bioaccumulation potential, pose potential adverse effects to human health and the environment.

37.    Effective July 9, 2024, the United States Environmental Protection Agency ("EPA") designated both PFOA and PFOS as "hazardous substances" under CERCLA because EPA determined that "they may present a substantial danger to the public health or welfare or the environment when released."  Final Rule, Designation of Perfluorooctanic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances, 89 Fed Reg. 39124 (May 8, 2024).

38.    On April 10, 2024, EPA announced enforceable levels for PFOA and PFOS in drinking water.  EPA set maximum containment levels (MCLs) for PFOA and PFOS at 4.0 ppt (also expressed as ng/L).

## DENIAL OF PLAINTIFF'S ADMINISTRATIVE FTCA DAMAGE CLAIM

39.     As required under the FTCA, implementing regulations codified at 28 C.F.R. Part 14, and 32 U.S.C. § 842.79, Plaintiff submitted an administrative FTCA damage claim and addendum on April 10, 2023, to the DOD on behalf of the U.S. Department of the Air Force Claims Service at Andrews Air Force Base, MD (Exhibit 1).

40.     Pursuant to §2675(a) of the FTCA the United States Air Force did not make a final disposition of the claim within six months after it was filed.

41.     Therefore, the claim is deemed a final denial for the purposes of the FTCA's exhaustion requirement.

## JURISDICTION AND VENUE

42.     This Court has subject-matter jurisdiction to adjudicate Defendant's violations of state tort law (as set forth in the First, Second and Third Causes of Action) by virtue of the incorporation of state law in Plaintiff's federal cause of action created by the Federal Tort Claims Act, 28 U.S.C. §§ 1331, 1346(b)(1) & 2674.

43.     This Court also has subject-matter jurisdiction to adjudicate the First, Second, and Third Causes of Action, as freestanding claims under state law that are subject to Section 313 of the Clean Water Act of 1972 (as amended), 33 U.S.C. § 1323(a), which creates federal jurisdiction to adjudicate, and waives Defendant's sovereign immunity regarding, state-law requirements pertaining to certain types of water pollution, including the requirement that damages be paid for injuries proximately caused by a breach of duty under state tort law.

44.    Additionally, Plaintiff brings this civil suit pursuant to: (i) the citizen suit enforcement provisions of Section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), and (ii) sections 42 U.S.C. 9607(a), 9613(f)(1), 9613(f)(3)(B), and 9613(g) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA").

45.    Under 28 U.S.C. § 1402(b), venue is proper in this Court because Plaintiff resides in this judicial district, and because the acts and omissions alleged herein occurred in this judicial district.

## FIRST CAUSE OF ACTION
### Continuing Public Nuisance

46.    Plaintiff reincorporates the preceding paragraphs above as though fully set forth herein.

47.    Plaintiff, its residents, and businesses have the common law right to clean, safe, potable source of water of their own choosing.

48.    Plaintiff was supplying what it believed to be a clean, safe, potable source of water when it was discovered that PFAS contamination originating from DMAFB had migrated to Plaintiff's water supply at concentrations exceeding applicable federal and state drinking water standards and health advisory levels.

49.    DMAFB knew of the contamination of its groundwater with PFAS and consciously disregarded a known risk that the contamination had already migrated off-site and into Plaintiff's water supply or that such risk was imminent.

50.     DMAFB knew, consciously disregarded, or in an exercise of reckless disregard should have known, that the location of its firefighting training centers and firefighting training exercises, and specifically the manner in which these activities were being carried out for decades, created a substantial risk that PFAS-containing AFFFs and residues would contaminate surface soils and sediments, stormwater runoff, and underlying groundwater, thus threatening the quality and safety Plaintiff's drinking water supply.

51.     DMAFB knew, consciously disregarded, or in an exercise of reckless disregard should have known, that contamination of Plaintiff's water supply would pose a substantial risk of harm to Plaintiff and its water customers.

52.     The acts and omissions of DMAFB unreasonably and significantly interfered with, and continue today to unreasonably and significantly interfere with, the common rights of Plaintiff, its residents, and business, to a safe source of drinking water of their own choosing, and have caused and continue today to cause, detrimental effects on the public health, welfare, safety, comfort, and convenience of the residents and businesses, thus creating a public nuisance.

53.     DMAFB has knowingly and deliberately failed to remove the PFAS contamination from the soils and groundwater underneath its property, and has knowingly and deliberately failed to take any steps to stop the ongoing migration of PFAS in groundwater from DMAFB to Plaintiff's water supply, thereby (a) knowingly and deliberately continuing to unreasonably and significantly interfere with the common rights of Plaintiff's residents and businesses to a safe source of drinking water of their own choosing, and (b) knowingly and deliberately continuing to cause detrimental effects on

the public health, welfare, safety, comfort, and convenience of the residents and businesses, thus creating an ongoing public nuisance.

54.     As a direct and proximate result of DMAFB's conduct, DMAFB is creating an ongoing public nuisance, Plaintiff has incurred substantial damages, which were presented to DMAFB in Plaintiff's administrative FTCA damage claim but denied in their entirety.

## SECOND CAUSE OF ACTION
### Continuing Trespass

55.     Plaintiff reincorporates the preceding paragraphs above as though fully set forth herein.

56.     Plaintiff is the owner, operator, and actual possessor of real property and improvements used for collecting drinking water.

57.     Upon information and belief, DMAFB knew that PFAS contamination on its property exceeded applicable federal health advisory levels and recommended remediation guidelines at numerous locations, and that the contamination migrated through groundwater and surface water contaminating Plaintiff's real property used for collecting drinking water.

58.     The acts and omissions of DMAFB in causing PFAS contamination of its own property have caused the contamination to migrate, via surface soils and sediments, stormwater runoff, and groundwater, contaminating Plaintiff's real property used for collecting drinking water, interfering with its property rights, including Plaintiff's right to the full use and enjoyment of its water system for treatment and distribution to residents

and businesses. These acts and omissions created a trespass on Plaintiff's property and unlawful interference with Plaintiff's property rights.

59.    DMAFB has not removed the contamination from the soils on, and the groundwater running under, the property, nor has it taken any steps to stop the ongoing migration of the PFAS contamination on Plaintiff's property and into its water distribution system, thus creating an ongoing trespass against Plaintiff's property rights.

60.    As a direct and proximate result of DMAFB's conduct in creating an ongoing trespass against Plaintiff's property, in the form of the ongoing PFAS contamination of Plaintiff's water system, Plaintiff has incurred substantial damages, which were presented to DMAFB in Plaintiff's administrative FTCA damage claim but denied in their entirety.

<u>THIRD CAUSE OF ACTION:</u>
**Failure to warn**

61.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

62.    Defendants breached their duty to warn Plaintiff of the likelihood of release of hazardous substances, including but not limited to PFAS and other toxic chemicals, at and in the vicinity of Defendants' facilities, and, consequently, in the capture zone of Plaintiff's wells.

63.    Upon learning of the release of hazardous substances, including but not limited to PFAS and/or products containing PFAS, and other toxic chemicals at their facilities and/or properties, Defendants owed Plaintiff a duty to timely notify and warn Plaintiff of the releases.

64.     Defendants breached that duty by failing to timely notify and warn Plaintiff of the releases of hazardous substances, including but not limited to PFAS and other toxic chemicals, on and under their properties and, consequently, in the capture zone of Plaintiff's wells.

65.     As a result of Defendants' breaches of their duty to warn Plaintiff, Plaintiff was forestalled from undertaking effective and immediate remedial measures, and Plaintiff has expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of Defendants' negligence for many years into the future.

66.     As a direct and proximate result of Defendants' above-described failure to provide warnings, Plaintiff has incurred and will continue to incur the following damages:

a.  Existing contamination of Plaintiff's wells, which may have been prevented or mitigated if timely warnings were given;

b.  Costs of additional testing and monitoring of the groundwater, aquifer system and Plaintiff's production wells for hazardous substances, including but not limited to PFAS and other toxic chemicals' contamination;

c.  Costs of investigations, risk assessment and planning mitigation measures to address the contamination by hazardous substances, including but not limited to PFAS and other toxic chemicals;

d.  Costs of treatment for hazardous substances, including but not limited to PFAS and other toxic chemicals, including design, installation and operation of GAC systems to remove PFAS to safe level of non-detect;

e.  Loss of water production capacity;

f.  Diminished consumer confidence in Plaintiff's water;

g.  Potential cost to design and install replacement wells;

h.  Attorney fees and costs; and

i.  Other compensatory damages.

67.     As a direct result of the foregoing, Plaintiff seeks compensatory damages in a sum to be determined by a jury at the time of trial.

## FOURTH CAUSE OF ACTION
### Mandatory Injunction Pursuant to 42 U.S.C. § 6972(a)(1)(B) (RCRA)

68.     Plaintiff reincorporates the preceding paragraphs above as though fully set forth herein.

69.     Pursuant to 42 U.S.C. § 6972(a)(1)(B)-

> [A]ny person may commence a civil action on his own behalf . . . against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

42 U.S.C. § 6972(a)(1)(B).

70.     Pursuant to 42 U.S.C. § 6903(15), Plaintiff is a "person" as referenced in 42 U.S.C. § 6972(a)(1)(B).

71.     Pursuant to 42 U.S.C. §§ 6903(15) and 6972(a)(1)(B), Defendant is a "person" as referenced in 42 U.S.C. § 6972(a)(1)(B).

72.     Pursuant to 42 U.S.C. § 6903(5), PFOA and PFOS are solid wastes and/or hazardous wastes.

73.     Defendant has contributed and/or is contributing to the handling, storage, and/or disposal of solid waste and/or hazardous wastes at and emanating from DMAFB.

74.     Defendant's handling, storage, and/or disposal of AFFF-containing PFOA/PFOS and/or their precursors within the boundaries of DMAFB may present an imminent and substantial endangerment to the health of the citizens of the Town and/or the environment.

75.     By reason of the foregoing Plaintiff is entitled to an injunction requiring Defendant to: (i) properly dispose of all AFFF that contains PFOA, PFOS and/or PFOA/PFOS precursors, (ii) immediately disclose by fact discovery document production and testimony all locations where DMAFB used AFFF, stored AFFF and washed AFFF equipment at the DMAFB, and (iii) investigate and remediate, or pay for the investigation and remediation of, all PFOA/PFOS contamination at and emanating from DMAFB caused, in whole or in part, by DMAFB's storage of AFFF, use of AFFF and washing of AFFF equipment.

## FIFTH CAUSE OF ACTION
### Recovery of Response Costs Pursuant to 42 U.S.C. § 9607 (CERCLA)

76.     Plaintiff reincorporates the preceding paragraphs above as though fully set forth herein.

77.     Defendant is a "person," as defined by Section 101(21) of CERCLA, 42 U.S.C. §§ 9601(21), as an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, municipality, commission, political subdivision of a State, or any interstate body.

78.     Defendant is an "owner" and/or "operator" within the meaning of Section 101(2) of CERCLA, 42 US.C. § 9601(20).

17

79.     The DMAFB is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

80.     Defendant is a responsible party under § 107(a) of CERCLA because: (1) Defendant is the current operator of DMAFB; (2) Defendant was the operator of DMAFB at the time AFFF-containing PFOA and/or PFOS was discharged and/or disposed of at those facilities; and/or (3) Defendant arranged for the disposal of AFFF-containing PFOA and/or PFOS at DMAFB.

81.     Both PFOA and PFOS are both designated "hazardous substances" pursuant to section 102 of CERCLA, 42 U.S.C. § 9602.

82.     There have been numerous releases and disposal of hazardous substances, including PFOA and PFOS, at the above facility within the meaning of Sections 101(22), 101(29) and 101(14) of CERCLA, 42 U.S.C. § 9601(14). Further, Defendant's purchase, use, storage, transport, and disposal of AFFF is responsible for the PFAS contamination at and emanating from DMAFB.

83.     Disposal of hazardous substances at DMAFB resulted in the release of hazardous substances to the environment (as the term "release" is defined in Section 101(22) of CERCLA, 42 U.S.C. § 9601(22)).

84.     The hazardous substances released and/or disposed of at Defendant's facility have impacted and contaminated the groundwater, including groundwater which supplies Plaintiff's drinking water wells.

85.     Consistent with the National Contingency Plan, Plaintiff has incurred, is incurring, and will continue to incur necessary response costs to address the release or

threatened release of hazardous substances at and emanating from DMAFB, as required under CERCLA, 42 U.S.C. § 9607(a), and as set forth in the rules promulgated by the EPA, 40 CFR Sections 300 et seq.

## SIXTH CAUSE OF ACTION
### Response Costs Pursuant to 42 U.S.C. § 9613(f)(1) (CERCLA)

86.     Plaintiff reincorporates the preceding paragraphs above as though fully set forth herein.

87.     Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f), provides in pertinent part that: any person may seek contribution from any other person who is liable or potentially liable under § 9607(a) of [CERCLA], during or following any civil action under … § 9607(a) of [CERCLA].

88.     Defendant is a possible responsible party pursuant to section 107(a) of CERCLA.

89.     Disposal of hazardous substances at DMAFB resulted in the release of hazardous substances to the environment (as the term "release" is defined in Section 101(22) of CERCLA, 42 U.S.C. § 9601(22)).

90.     Defendant is liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

91.     By reason of the foregoing, Plaintiff is entitled to judgment for contribution and damages incurred to the date of judgment.

## SEVENTH CAUSE OF ACTION
### Declaratory Judgment Pursuant to 42 U.S.C. §§ 9607(a) and 9613(g)(2) (CERCLA)

92.     Plaintiff reincorporates the preceding paragraphs above as though fully set forth herein.

93.     By reason of the foregoing, an actual, substantial and legal controversy now exists between Plaintiff and Defendant regarding Defendant's obligation to fund all past and future costs associated with addressing the contamination at and emanating from DMAFB as referenced herein.

94.     To date Plaintiff has spent a total of $10,293,048.80 in PFAS remediation.

95.     A declaratory judgment will prevent the need for multiple lawsuits as Plaintiff continues to incur costs of response in connection with DMAFB for which Defendant should be liable, and will provide a final resolution of the issue between the parties regarding liability for such costs.

96.     A declaratory judgment will ensure that Defendant pays its fair share of costs in connection with addressing the contamination at and emanating from DMAFB, insuring a proper response to the problem.

97.     A declaratory judgment will ensure that Plaintiff's and Defendant's allocation of cost associated with addressing the contamination at and emanating from DMAFB is established, insuring an equitable and efficient response to the problem.

98.     Public interest will be served in that a declaratory judgment will ensure an environmentally proper response to the contamination existing at DMAFB.

99.     Plaintiff will continue to incur additional remedial and response costs, including but not limited to costs to investigate, test, monitor, design, install, operate and

maintain treatment systems, and take other measures to address the contamination of its property and its drinking water supply with 1,4-Dioxane.

100.    Plaintiff's future costs will be consistent with the National Contingency Plan, 40 C.F.R. Part 300.

101.    Plaintiff is entitled to a declaratory judgment under 42 U.S.C. §9613(g)(2).

102.    Plaintiff is thus entitled to a declaratory judgment that Defendant is legally responsible for the future response costs in connection with DMAFB.

## PRAYER FOR RELIEF

WHEREFORE, based on the forgoing claims, Plaintiff, TOWN OF MARANA requests that the Court grants the following relief:

1.    Award the Town of Marana monetary damages for the continuing trespass and continuing public nuisance caused by the contamination of DMAFB, up to the maximum dollar amount set forth in the Town of Marana's administrative FTCA damage claim.

2.    Order DMAFB to reimburse the Town of Marana for its past, present and future costs to investigate, evaluate, and measure the contamination that continues to migrate into the Town of Marana, including the costs of employing outside consultants and testing labs for these tasks, up to the maximum dollar amount set forth in the Town of Marana's FTCA damage claim.

3.  Order DMAFB to pay for, or agree to reimburse the cost of a treatment system to be installed at the Town of Marana's water treatment plant to remove PFAS from the incoming, untreated water, up to the maximum dollar amount set forth in the Town of Marana's administrative damage claim.

4.  To the extent permissible under the FTCA, award the Town of Marana its reasonable attorney fees and legal expenses incurred in evaluating the PFAS contamination and prosecuting these FTCA claims, up to the maximum dollar amount set forth in the Town of Marana's administrative FTCA damage claim; and,

Award the Town of Marana such other relief as the Court deems just and proper.

Dated:  September 20, 2024.

**GALLAGHER & KENNEDY, P.A**

By: /s/ *Kenneth N. Ralston*
Kevin D. Neal
Kenneth N. Ralston
2575 East Camelback Road
Phoenix, Arizona 8516-9225
kevin.neal@gknet.com
ken.ralston@gknet.com

**NAPOLI SHKOLNIK**

By: /s/ *Patrick Lanciotti*
Patrick Lanciotti (*Pro Hac Vice Pending*)
360 Lexington Avenue, 11th Fl.
New York, New York 10017
(212) 397-1000
PLanciotti@napolilaw.com

By:  /s/ *Paul J. Napoli*
Paul J. Napoli (*Pro Hac Vice Pending*)
1302 Avenida Ponce de Leon
Santurce, Puerto Rico 00907
pnapoli@nsprlaw.com

By: /s/ *Andrew W. Croner*
Andrew Croner (*Pro Hac Vice Pending*)
360 Lexington Avenue, 11th Fl.
New York, New York 10017
acroner@napolilaw.com

10074449v1/29129-0001